NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0096n.06
Filed: February 8, 2005

No. 04-5116

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TERRY LYNN OAKS and MARGIE ANN )
OAKS, )
                                 )
    Debtors-Appellants, )
                                 )    ON APPEAL FROM THE UNITED
v.                               )    STATES DISTRICT COURT FOR THE
                                 )    EASTERN DISTRICT OF TENNESSEE
BANK ONE CORPORATION, )
                                 )
    Creditor-Appellee. )    OPINION
                                 )
                                 )
_____ )

**Before:  MERRITT, MOORE, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.**  Terry Lynn Oaks and Margie Ann Oaks filed

for Chapter 13 bankruptcy.  Bank One Corporation submitted a proof of claim in the amount of

$6,027.87, based upon the deficiency arising from the sale of a car that the Oakses had leased from

Bank One.  The Oakses objected on the ground that the sale of the car had not been conducted in

a commercially reasonable manner.

After this objection was overruled by the bankruptcy court, the Oakses appealed to the

district court.  It affirmed.  For the reasons set forth below, we **AFFIRM** the judgment of the district

court.

**I.  BACKGROUND**

## A.     Factual background

In 1999, Terry and Maggie Oaks entered into a contract with Bank One to lease a 1999 Nissan Sentra.  The agreement specified that monthly payments were to be made over a five-year term.  But the Oakses returned the car after only three years, claiming in their brief to have been "under the mistaken belief that the contract they had entered into with Bank One was for a three . . . year term."  The Oakses initially filed a Chapter 13 bankruptcy petition in July of 2002, obtained a dismissal, and then refiled in September of the same year.

In the first bankruptcy proceeding, Bank One filed a proof of claim for the value of the remaining payments on the Nissan Sentra, which was $10,643.14.  A copy of the lease was attached to the proof of claim.  In October of 2002, a month after the Oakses had filed for bankruptcy a second time, Bank One informed them that the Nissan Sentra had been sold at auction for $5,400.  This left the Oakses still owing $6,027.87, which included the remainder of the payments they would have made plus the cost of auctioning the car.  The sale price of $5,400 was approximately 53% of the car's Bluebook retail value as of April 23, 2003.  Bank One filed a new proof of claim for the $6,027.87 balance in November of 2002, but failed to attach the lease agreement.

## B.     Procedural background

The Oakses objected to Bank One's second proof of claim in the bankruptcy court, alleging that the sale of the car was not commercially reasonable.  Their attorney engaged in a lengthy dialogue with the judge, after which the objection was overruled.  During this dialogue, both the bankruptcy judge and the Oakses' attorney explicitly acknowledged that Bank One had not attached a copy of the lease agreement to the second proof of claim.  When the judge was informed that a

copy of the lease was attached to the initial proof of claim, he called a recess to allow a court official to retrieve the document. A copy of the initial proof of claim was secured, and the discussion of the lease from that point forward was based upon the lease agreement appended to that earlier claim. At no point during this proceeding did the Oakses' attorney object to the second proof of claim on the ground that it had been improperly filed.

The Oakses appealed to the district court, claiming that the sale was not commercially reasonable, but also presenting a new argument that the second proof of claim had been filed incorrectly. Without addressing the improper-filing argument, the district court affirmed, holding that the Oakses "ha[d] not shown that the Bankruptcy Court's ruling was factually or legally incorrect." This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

In a bankruptcy case, this court "review[s] the judgment of the bankruptcy court directly, and follow[s] its findings of fact unless clearly erroneous." *In re Gibson Group, Inc.*, 66 F.3d 1436, 1440 (6th Cir. 1995). We "exercise plenary review with regard to questions of law." *In re Laguna Assoc. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994).

### B. Proof of claim as prima facie evidence

Rule 3001 of the Federal Rules of Bankruptcy Procedure governs the filing of a proof of claim in a bankruptcy proceeding. A proof of claim "executed and filed in accordance with [Rule 3001] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.

P. 3001(f). Where the claim is based on a written instrument, "the original or a duplicate [of the writing] shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c).

### 1. *Preservation of the issue for appeal*

The assertion that "[t]here were no documents filed with the November 25, 2002 proof of claim" was not raised as an objection to the validity of the proof of claim in the bankruptcy court. "It is well settled law that this court will not consider an error or issue which could have been raised below but was not." *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1299 (6th Cir. 1992) (citation omitted).

This principle is no less true in bankruptcy proceedings. *See Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) (noting that, "[o]rdinarily, under the Bankruptcy Rules as under the Civil Rules, a defense is lost if it is not included in the answer or amended answer"); *see also In re Harshbarger*, 66 F.3d 775, 777 n.3 (6th Cir. 1995) (observing that where a particular defense was not raised before the bankruptcy court, the district court properly "refused to address it for that reason," and declining to consider the argument because of "the long-standing general rule of this circuit that appellate courts are not to address issues not raised for the first time in the trial court") (quotation marks omitted). The Federal Rules of Bankruptcy Procedure, as well as the relevant sections of the Federal Rules of Civil Procedure, specifically require that the type of defense now raised by the Oakses must first be raised at the trial level. *See* Fed. R. Bankr. P. 7012(b) ("Rule 12(b)-(h) F. R. Civ. P. applies in adversary proceedings."); Fed. R. Civ. P. 12(h)(2) ("A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading

permitted or ordered under Rule 7(a) [which delineates the forms of pleadings allowed at trial], or by motion for judgment on the pleadings, or at the trial on the merits.")

Furthermore, the circumstances of the bankruptcy court proceedings strongly suggest that the Oakses' attorney intentionally waived this objection. Both the judge and the Oakses' attorney acknowledged that the second proof of claim did not have the lease agreement attached, yet neither suggested that the claim might be invalid for that reason. A copy of the initial proof of claim was retrieved from the clerk's office during a discussion between the judge and the Oakses' attorney, creating the clearest possible contrast between a correctly filed proof of claim and the allegedly incorrectly filed one. Under these circumstances, the Oakses had ample opportunity to present their improper-filing objection to the bankruptcy court. There is no reason to permit them to litigate this objection for the first time on appeal. *Cf. Kontrick*, 540 U.S. at 445 ("No reasonable construction of complaint-processing rules would allow a litigant situated as [the debtor] is to defeat a claim, as filed too late, after the party has litigated and lost the case on the merits.")

### 2. *Lack of merit of the underlying argument*

Moreover, even if the issue had been preserved for appeal, the Oakses would have not been able to defeat the validity of Bank One's proof of claim. This court has adopted the long-standing common law doctrine of informal proofs of claim, which "permits a bankruptcy court to treat the pre-bar date filings of a creditor as an informal proof of claim which can be amended after the bar date so that it is in conformity with the requirements of [Rule 3001]." *In re M. J. Waterman & Assocs., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000). Although "[t]he standards used by courts varies throughout the country, . . . this jurisdiction has settled on a four element test. . . ." *Id.* at 609. The

four elements are as follows: "(1) The proof of claim must be in writing; (2) The writing must contain a demand by the creditor on the debtor's estate; (3) The writing must express an intent to hold the debtor liable for the debt; and (4) The proof of claim must be filed with the bankruptcy court." *Id.* (citing *In re Vaughn Chevrolet*, 160 B.R. 316, 319 (Bankr. E.D. Tenn. 1993)). If all four of these conditions are met, "the court may examine a fifth factor—whether it would be equitable to allow the amendment of the informal proof." *Id.*

The second proof of claim filed by Bank One easily meets the first four prongs. It is (1) in writing, it (2) contains a demand on the debtor's estate for $6,027.87, and its very existence indicates (3) an intent to hold the Oakses liable for the debt. Finally, the proof of claim was (4) filed with the bankruptcy court.

Before the bankruptcy court's judicial notice of the lease agreement can be considered as an amendment to the second proof of claim, an informal proof-of-claim analysis would require us to address the fifth factor. Like the first four, it cuts strongly in Bank One's favor. The Oakses do not dispute that they signed a contract agreeing to lease a 1999 Nissan Sentra for five years, and they do not dispute the validity of Bank One's initial proof of claim. Although the Oakses have provided evidence that the auction sale price of $5,400 was far below the Bluebook retail value of the car, they provided no evidence of what the wholesale value was, and no evidence about the condition of the particular car they leased at the time they turned it in. As discussed below, the Oakses have also failed to prove that the sale of the vehicle was commercially unreasonable. Allowing the Oakses to evade Bank One's claim based on a transparent filing error would therefore not be an equitable result. In sum, even if the Oakses had preserved the objection for appeal, the document

filed by Bank One, combined with the bankruptcy court's judicial notice of the lease, would have

been sufficient under the informal-proof-of-claim doctrine to make Bank One's proof of claim valid.

We therefore hold that Bank One's claim is prima facie evidence of the amount owed by the Oakses.

**C.      The Oakses' attempt to negate the validity of the proof of claim**

As the district court correctly stated, a valid proof of claim is prima facie evidence of the

amount owed.  *See* Fed. R. Bankr. P. 3001(f); *Whitney v. Dresser*, 200 U.S. 532, 534-35 (1906)

(holding that "a sworn proof of claim" should be treated "as some evidence, even when it is

denied").  Faced with this evidence, the Oakses had the burden of producing sufficient evidence to

negate the amount claimed by Bank One.

The evidence presented by the Oakses to the bankruptcy court purported to show that Bank

One had sold the car in a manner that violated the lease contract's requirement that the car be sold

in a commercially reasonable manner.  Specifically, the Oakses alleged that (1) they were given no

notice of the sale, and (2) the car was sold for just 53% of its Bluebook retail value.

*1.      Lack of notice*

The section of the contract providing for early termination of the lease states that the value

of the vehicle may be determined by "the net amount received by [Bank One] upon the sale of the

[v]ehicle in a commercially reasonable manner."  What is "commercially reasonable" is not defined

by the lease.  As noted by the bankruptcy judge, however, Tennessee statutes providing for the rights

of sellers and lessors to dispose of goods in the event of default shed some light on whether a

commercially reasonable sale of leased merchandise requires notice to the defaulting lessee.

*Compare* Tenn. Code Ann. § 47-2-706 (delineating a seller's right to dispose of goods) *with* Tenn. Code Ann. § 47-2A-527(1) (providing for a lessor's right to dispose of goods).

The seller's statute imposes a direct-notice requirement on sellers seeking to resell goods at private sales, and a list of requirements for public sales that serve the same purpose. §47-2-706(3)-(4). In contrast, the lessor's statute provides that, after default by a lessee, "the lessor may dispose of the goods concerned . . . by lease, sale, or otherwise." § 47-2A-527(1). Neither the bankruptcy judge nor the Oakses' attorney was able to cite any Tennessee caselaw that equates a commercially reasonable sale with notice to the lessee, and we have found none. And at least one unpublished Tennessee case holds to the contrary. *See Advantage Leasing Co. v. Shepperd*, No. 88-236-II, 1988 WL 136667, at *4 (Tenn. Ct. App. 1988) (unpublished) (declining to hold that the sale of a leased car without notice to the lessees was commercially unreasonable).

The Oakses rely primarily on a bankruptcy case that interprets a Florida statute defining commercially reasonable sales. *See In re Convention Press, Inc*., 84 B.R. 232 (Bankr. M.D. Fla. 1988) (holding that Fla. Stat. Ann. § 679.504(3), which has since been repealed, made notice to the lessee a condition of a commercially reasonable sale of a leased car). But even if the underlying statute had not been repealed, this case would not be on point. The Florida statute provided for the rights of sellers to dispose of the collateral in a secured transaction, but made no distinction between the rights of sellers and the rights of lessors. This lack of differentiation makes the Florida law inapposite, because Tennessee has a separate statute concerning the right of lessors to dispose of property. *See* Tenn. Code Ann. § 47-2A-527(1) (providing for a lessor's right to dispose of goods).

The Oakses also cite a Tennessee statute, incorporating part of the Uniform Commercial Code, that requires notification in the context of secured transactions. *See* Tenn. Code Ann. § 47-9-611 (delineating notification for the sale of merchandise held as collateral in secured transactions). This statute, however, does not mention leases. Although the statute was last amended in 2002, fourteen years after *Sheppard* was decided, it contains no repudiation of the *Sheppard* court's holding that lessees "are not entitled to the same protections the Uniform Commercial Code reserves for buyers of consumer goods [but are] . . . entitled only to insist that [the lessor] abide strictly by the terms of its lease agreement." *Shepperd*, 1988 WL 136667, at *4.

We therefore find no error in the district court's holding that "[t]he statutory right to prior notice applies to retail installment purchases of vehicles and not to leases." For this reason, the Oakses' claim of lack of notice is not sufficient to rebut the validity of the amount claimed by Bank One.

### 2.     *Sale price of the car*

As the bankruptcy judge correctly noted, the evidence proffered by the Oakses related to the retail price of the car rather than its wholesale price, and the price quoted was from a source dated almost a year after the car was sold. The Oakses' attorney claimed that "the retail value in April of 2003 is not going to be a whole lot different from the wholesale value in 2002 in July," but no evidence to this effect was presented. Nor was any proof presented as to the condition of the particular car in question. Because of this lack of evidence, the claim that Bank One sold the car for an unreasonably low price falls short of the proof needed to negate the validity of the amount claimed by Bank One.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.