In re U.S. OFFICE PRODUCTS CO.
SECURITIES LITIGATION.

Edward C. Dulworth, et al., Plaintiffs,

v.

U.S. Office Products Co.,
et al., Defendants.

MDL No. 1271.
Civil Action No. 3:99CV–636–H.

United States District Court,
District of Columbia.

Aug. 3, 2004.

Andrew L. Barroway, David Kessler, Schiffrin & Barroway, LLP, Bala Cynwd, PA, Daniel S. Sommers, Cohen Milstein Hausfeld & Toll, PLLC, Burton H. Finkelstein, Finkelstein, Thompson & Loughran, Washington, DC, Jules Brody, Aaron L. Brody, Stull, Stull, & Brody, Lester L. Levy, Wolf Popper, LLP, Laura M. Perrone, Law Offices of Laura M. Perrone, New York, NY, Michelle Rago, Lowey Dannenberg Bemporad & Selinger, P.C., Richard B. Dannenberg, Jill Rosell, Lowey Dannenberg Bemporad & Selinger, White Plains, NY, Ann H. Rubin, Carmody & Torrance, LLP, New Haven, CT, Rock Allen Wood, Dickinson Wright, PLLC, Grand Rapids, MI, Victor B. Maddox, Tachau Maddox Hovious & Dickens, PLC Louisville, KY, David Edwin Wright,

Leagre Chandler & Millard, LLP, Scott D. Matthews, Ice Miller, Indianapolis, IN, Elizabeth M. Boyle, Gulfcoast Legal Services, Inc., Civil Legal AID–LSC Funded, Sarasota, FL, Richard E. Castiglioni Diserio Martin O'Connor & Castiglioni, Stamford, CT, for Plaintiffs.

James Linwood Quarles, III, Wendy Anderson Terry, Hale & Dorr, John C. Keeney, Hogan & Hartson, LLP, Christopher Paul Simkins, U.S. Department of Justice, Counterespionage Section, Criminal Division, David Patrick Donovan, Wilmer, Cutler & Pickering Hale & Dorr, John Quinn Rounsaville, Jr., Wilmer, Cutler & Pickering Washington, DC, Ira S. Meyerowitz, Richard A. Roth, Littman Krooks Roth & Ball, P.C., New York, NY, Charles W. Croscup, Wiley E. Mayne, Denver, CO, for Defendants.

### MEMORANDUM OPINION

URBINA, District Judge.

#### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case comes before the court on the defendants' motion for summary judgment. Pursuant to a bankruptcy court order, the plaintiffs—creditors of the bankrupt defendant—were required to file proofs of claim with the bankruptcy court to preserve their claims against the defendants' estate. The defendants assert that the plaintiffs failed to file proper proofs of claim in the bankruptcy proceedings. As a threshold matter, the court concludes that it has jurisdiction to adjudicate the defendants' motion for summary judgment. The court further holds that the plaintiffs did not file adequate proofs of claim for three reasons: first, five of the plaintiffs did not individually file proofs of claim at all; second, the other five plaintiffs filed proofs of claim unrelated to the subject of this litigation; third, the Dulworth Family Limited Partnership ("the Partnership") could not file proofs of claim on behalf of the plaintiffs. Accordingly, because the plaintiffs failed to preserve their allegations through valid proofs of claim filed with the bankruptcy court, the court grants the defendants' motion for summary judgment.

### II. BACKGROUND

In February 1995, U.S. Office Products Company ("USOP") held its initial public offering and subsequently grew by either purchasing or merging with small companies. Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mot.") at 3. One such company was Dulworth Office Furniture Company ("DOF"). *Id.* In October 1997, USOP merged with DOF (collectively, "the defendants"), a company formerly owned by members of the Dulworth family. *Id.*

On September 3, 1999, ten parties—Jack Dulworth, Joseph Dulworth, Chan Milton, Edward Dulworth, Thomas Dulworth, Mary Dulworth, Jack Dulworth Trust, Joseph Dulworth Trust, Thomas Dulworth Trust, and Chan Milton Trust (collectively, "the plaintiffs")—filed an initial Verified Complaint ("Initial Compl.") in Kentucky state court, asserting claims of common law fraud, defamation, and breach of contract. *Id.* at 4; Defs.' Mot. for J. on the Pleadings at 2. The plaintiffs named as defendants both USOP, a Delaware corporation, and DOF, a Kentucky corporation which was by then a wholly-owned subsidiary of USOP. Defs.' Mot. for J. on the Pleadings at 2. In this Initial Complaint, however, the plaintiffs only asserted claims against USOP. Defs.' Mot. at 4. The defendants then removed the case to federal court in Kentucky, and the district court denied the plaintiffs' motion to remand, holding that the plaintiffs had fraudulently joined DOF to defeat diversity. *Id.*

On January 17, 2000, the plaintiffs filed an Amended and Substitute Verified Complaint ("Am.Compl."), which listed claims against DOF and new claims against USOP. The complaint listed eight counts in total: two for common law and securities fraud arising out of the merger between USOP and DOF, and six counts based on defamation, invasion of privacy, failure to return pledged assets, breach of contract, a declaration of rights regarding non-competition agreements, and punitive damages, allegedly arising from events occurring in 1998 or 1999. Am. Compl. at 2. Because the plaintiffs brought the new securities fraud claim against USOP under the Securities Act of 1933 and thus provided an independent basis for federal jurisdiction, the Kentucky District Court again denied the plaintiffs' renewed motion to remand. *Id.* at 4. The case was then transferred to this court. *Id.*

On May 26, 2000, the Partnership filed a separate lawsuit in Kentucky state court against the defendants based on claims of fraud, breach of contract, and promissory estoppel. *Dulworth Family Ltd. P'ship v. Dulworth Office Furniture Co.,* No. 00CI03437 (Jefferson Ky. Cir. Ct. May 26, 2000) ("State Compl."). The Partnership includes Edward Dulworth, Mary Dulworth, Jack Dulworth, Joseph Dulworth, and Chan Milton, who are also plaintiffs in the instant suit. Defs.' Statement of Undisputed Facts ("Defs.' Statement") ¶ 7. The other five plaintiffs in this suit— Thomas Dulworth, Jack Dulworth Trust, Joseph Dulworth Trust, Thomas Dulworth Trust, and Chan Milton Trust—are not in the Partnership. *Id.*

On March 5, 2001, the defendants filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court").

*Id.* ¶ 1. The next day, the defendants notified the plaintiffs of their bankruptcy filings. *Id.* On May 10, 2001, the Bankruptcy Court set a July 16, 2001 deadline for persons with claims against the defendants to file proofs of claim against the bankruptcy estate.[1] *Id.* ¶ 2. Subsequently, the Bankruptcy Court extended the deadline to September 17, 2001 ("the Bar Date"). *Id.* In both of these orders, the Bankruptcy Court stated that all "creditors ... must file proofs of claim" or be "forever barred, estopped and enjoined from asserting claims." Bankr.Ct. Order dated May 10, 2001; Bankr.Ct. Order dated Aug. 6, 2001. The defendants notified all of the plaintiffs of the Bar Date, provided instructions for filing proofs of claim, and informed them of the relevant deadlines. Defs.' Statement ¶ 3.

On December 13, 2001, and while the federal and state cases were pending, the Bankruptcy Court entered an Order, that confirmed USOP's Joint Liquidating Plan of Reorganization (collectively, "the Plan and Order"). Bankr.Ct. Order dated Dec. 13, 2001; First Am. Plan of Reorganization dated Nov. 5, 2001. The reorganization plan stated specifically that holders of "Class 7 Insured Litigation Claims" had the right to prosecute against USOP for any claims covered by liability insurance. First Am. Plan of Reorganization dated Nov. 5, 2001 at 19–20. The plaintiffs in this case contend that six of their eight counts (excluding defamation and invasion of privacy) are "Class 7 Insured Litigation Claims" as defined by the reorganization plan, because they have "claim[s] against a debtor that are the subject of litigation pending in a court of competent jurisdiction." *Id.* at 9–10. In addition, for a holder of a claim to proceed against the defendants' estate, that holder's claim

---

1. A proof of claim is "a written statement setting forth a creditor's claim ... [and] shall conform substantially to the appropriate Official Form." FED. R. BANKR P. 3001(a).

must be "Allowed" by the Bankruptcy Court. *Id.* at 3. As specified by the reorganization plan, one means by which a creditor's claim becomes "allowed" comes into play when that creditor files a proof of claim with the Bankruptcy Court by the Bar Date. *Id.* The Bankruptcy Court's confirmation order states, in part, that Class 7 Insured Litigation Claims are "deemed to have accepted the [reorganization] plan." Bankr.Ct. Order dated Dec. 13, 2001 at 4. Therefore, as holders of Class 7 Insured Litigation Claims who accepted the reorganization plan, the plaintiffs had to file timely proofs of claim with the Bankruptcy Court in order for their claims to be "allowed." Bankr.Ct. Order dated May 10, 2001; Bankr.Ct. Order dated Aug. 6, 2001. In addition, the Plan and Order stated that all matters arising out of, and related to the Chapter 11 Cases were referred to the Bankruptcy Court's jurisdiction. Bankr. Ct. Order dated Dec. 13, 2001; First Am. Plan of Reorganization dated Nov. 5, 2001.

Five of the plaintiffs—Jack Dulworth, Joseph Dulworth, Chan Milton, Edward Dulworth, and Thomas Dulworth—timely filed ten proofs of claim, concerning accrued vacation pay in the amounts of $5,000 or $9,999. Defs.' Statement ¶ 4. The other five plaintiffs—Mary Dulworth, Jack Dulworth Trust, Joseph Dulworth Trust, Thomas Dulworth Trust, and Chan Milton Trust—did not file individual proofs of claim. *Id.* ¶ 5.

The Partnership, a named party in the state suit but not in this suit, timely filed two proofs of claim with the Bankruptcy Court. *Id.* ¶ 8. The first addressed rent, insurance paid and maintenance in the amount of $13,834.97. *Id.* The second pertained to two leases dated October 17, 1997 as well as a claim for "Fraud, as a Plaintiff in the 'Multi–District' fraud litigation." *Id.* The partnership physically attached the Partnership's Kentucky state court complaint to the second proof of claim. *Id.*

The case was stayed due to the bankruptcy proceedings. Subsequently, the defendants filed a motion for summary judgment. The court now turns to that motion.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Bankruptcy Rule 7056, which governs summary judgment in bankruptcy proceedings, incorporates Rule 56 of the Federal Rules of Civil Procedure. FED. R. BANKR.P. 7056; *United States v. Spicer*, 57 F.3d 1152, 1159 (D.C.Cir.1995). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere exis-

tence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Court has Jurisdiction to Adjudicate this Matter

■ As a threshold matter, the plaintiffs argue that this court lacks jurisdiction to consider the defendants' motion for summary judgment, and that the Bankruptcy Court instead possesses exclusive jurisdiction over this proceeding. Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n") at 2–3. The court disagrees.

■ "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also In re Madison Guar. Sav. & Loan Ass'n*, 173 F.3d 866, 868 (D.C.Cir.1999). Specifically, the determination of whether a bankruptcy court has jurisdiction over a matter involves a two-part analysis: First, federal jurisdiction over the bankruptcy case or proceeding must exist pursuant to 28 U.S.C. § 1334, which is a broad grant of jurisdiction. *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir.1988); *Abbey v. Modern Afr. One*, 305 B.R. 594, 600–01 (D.D.C.2004). Second, whether a bankruptcy court rather than a district court can adjudicate a matter is determined pursuant to 28 U.S.C. § 157. *Id.*

■ First, 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [Bankruptcy], or arising in or related to cases under title 11." Second, if the federal courts have jurisdiction under 28 U.S.C. § 1334(b), a bankruptcy court, instead of the district court, can adjudicate a matter if the "district court ... provide[d] that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). If a referral is present, then a bankruptcy court "may hear and determine all cases under title 11 and all core proceedings *arising under* title 11, or *arising in* a case under title 11 ... and may enter appropriate orders and judgments ..." 28 U.S.C. § 157(b)(1) (emphasis added); *Abbey*, 305 B.R. at 601. Claims "arising in" a case under title 11 are limited to "administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding." *Atkinson v. Kestell*, 954 F.Supp. 14, 16 (D.D.C.1997) (quoting *In re Pettibone Corp.*, 135 B.R. 847, 851 (Bankr.N.D.Ill. 1992)). A claim "arises under" title 11 if the claim is made pursuant to a provision of title 11. *In re Franklin Computer Corp.*, 60 B.R. 795, 799 (Bankr.E.D.Pa. 1986). In contrast, "a bankruptcy judge

may hear [but not determine] a proceeding that is not a core proceeding but that is otherwise *related to* a case under title 11." 28 U.S.C. § 157(c)(1) (emphasis added). For claims "related to" a case under title 11, the test is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Atkinson,* 954 F.Supp. at 16 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984)). One of the core proceedings listed, is "allowance or disallowance of claims against the estate ..." 18 U.S.C. § 157(b)(2).

Though not specifically stated by the plaintiffs, it appears they contend that the "allowance or disallowance of claims" against the defendants' estate is a core-proceeding under 18 U.S.C. § 157(b)(2) and has been referred to the Bankruptcy Court's jurisdiction under 28 U.S.C. § 157(a). Pls.' Opp'n at 2–3. The plaintiffs point to the Plan and Order from the Bankruptcy Court as conferring jurisdiction to the Bankruptcy Court. *Id.* at 2. The reorganization plan does state that "the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among other things ... to allow or disallow any Claim ... [and] to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan." First Am. Plan of Reorganization dated Nov. 5, 2001 at 45. Similarly, the confirmation order states that the Bankruptcy Court "will retain jurisdiction of all matters arising out of, or related to, the Chapter 11 case." Bankr.Ct. Order dated Dec. 13, 2001 at 21.

While the plaintiffs are correct as to the Plan and Order's substance, they are incorrect as to its application. The plaintiffs filed their Initial Complaint on September 3, 1999, and their Amended Complaint on January 17, 2000, over a year before the Bankruptcy Court issued the Plan and Order. Defs.' Mot. at 4; *see generally* Bankr.Ct. Order dated Dec. 13, 2001, First Am. Plan of Reorganization dated Nov. 5, 2001. Essentially, they assert that the Plan and Order somehow divested this court of jurisdiction over matters related to complaints filed prior to the Plan and Order's very existence. The language in the Plan and Order, however, does not support this proposition. In fact, case law supports the contrary.

 "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). As a general rule, "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport–McMoRan Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991). Although the D.C. Circuit has not analyzed this rule as applied to bankruptcy situations, several other circuits have. Their conclusions have been uniform and unambiguous: district courts cannot be divested of jurisdiction by virtue of subsequent bankruptcies even if subsequent bankruptcy plans grant bankruptcy courts jurisdiction over the matters in question. *Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515 (2d Cir. 1998) (holding that "the district court was not divested of jurisdiction by reason of [the plaintiff's] bankruptcy"); *Owens–Illinois v. Rapid Am. Corp.,* 124 F.3d 619, 626 (4th Cir.1997) (stating that a bankruptcy plan could not divest the district court of subject matter jurisdiction); *Mar. Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1212 (3d Cir.1992) (holding that a defendant's bankruptcy did not divest a district court of its original subject matter

jurisdiction under 28 U.S.C. § 1334(b)); *Combined Broad., Inc. v. Urban Telecomms. Corp.*, No. 91–2254, 1992 WL 190899, at *1, 1992 U.S.App. LEXIS 18595, at *5 (4th Cir. Aug. 11, 1992) (rejecting a defendant's argument that "the bankruptcy court's reservation of jurisdiction in the bankruptcy plan effectively divested the district court of jurisdiction"); *In re WorldCom, Inc. Sec. Litig.*, 294 B.R. 553, 557 (S.D.N.Y.2003) (noting that allowing a bankruptcy court to divest a district court of jurisdiction "would create perverse incentives for the parties to engage in delay and gamesmanship in both the bankruptcy reorganization and the related litigation").

When the plaintiffs filed their Initial and Amended Complaints on September 3, 1999 and January 17, 2000, respectively, the defendants' bankruptcy had not yet occurred. Thus, at these points, only the district court had subject matter jurisdiction. *See Atkinson*, 954 F.Supp. at 16 (holding that "without the existence of an estate in bankruptcy, there is nothing for plaintiff[s'] current action to be related to or to arise in" and thus a bankruptcy court does not have jurisdiction). Because this jurisdiction could not be divested by the Plan and Order's referral clause pursuant to 28 U.S.C. § 157, this court retains jurisdiction over this matter.

■■■ Furthermore, even if the plaintiffs had filed their complaint after the Plan and Order's referral, this court still could have exercised original jurisdiction. Specifically, district courts are free to "withdraw, in whole or in part, any case or proceeding referred" to a bankruptcy court. 28 U.S.C. § 157(d). Thus, an order of reference, like that found in the reorganization plan, does not necessarily preclude a district court from 28 U.S.C. § 1334 jurisdiction. *Carlton v. Baww, Inc.*, 751 F.2d 781, 788 (5th Cir.1985) (holding that "a referral from the district court

to a bankruptcy judge does not forever divest the district court of original subject matter jurisdiction").

■■■ The plaintiffs incorrectly rely on the proposition that "once the district court has referred the matter to the bankruptcy court, 'both courts cannot concurrently preside over the same aspects of [a] case.'" Pls.' Opp'n at 3 (quoting *Jackson Nat'l Life Ins. Co. v. Kendig*, 231 B.R. 717, 720 (Bankr.N.D.Ill.1999)). This argument is mistaken. This court and the Bankruptcy Court are not presiding over "the same aspects of [a] case," because the Bankruptcy Court, while engaged in the administration of the defendants' estate, is not concurrently adjudicating the present matter concerning the adequacy of the plaintiffs' proofs of claim. In contrast, district courts and bankruptcy courts have concurrent power, as in this case, to adjudicate different matters between the same parties. *See Combined Broad.*, 1992 WL 190899, at *1, 1992 U.S.App. LEXIS 18595, at *5 (stating that "a federal district court with jurisdiction over a bankruptcy case exercises a jurisdiction merely concurrent with that of all other courts which properly may entertain other matters involving the same parties"). Accordingly, the court holds that it has proper jurisdiction to entertain the defendants' motion for summary judgment.

## C. The Court Grants the Defendants' Motion for Summary Judgment

■■■ The Federal Rules of Bankruptcy Procedure provide guidelines that all creditors, such as the plaintiffs in this case, must follow in order to advance claims against a company in bankruptcy. In a Chapter 11 case such as this one, "any creditor or equity security holder whose claim or interest is ... scheduled as disputed, contingent, or unliquidated shall file a proof of claim." FED. R. BANKR.P.

3003(c)(2). Specifically, "a proof of claim is a written statement setting forth a creditor's claim" that "conform[s] substantially to the appropriate Official Form." *Id.* at 3001(a). The relevant proof of claim form for creditors is Form 10, Official Bankruptcy Forms, which requires, *inter alia,* the creditor's name and address, a short description of the basis for the claim, the date the debt was incurred and the amount of the claim. Bankr.Form 10. A creditor is defined as "any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed." Advisory Comm. Notes to Bankr.Form 10 at 3 (citing 11 U.S.C. § 101). In addition, the time frame in which creditors may file proofs of claim is up to the discretion of the bankruptcy court. FED. R. BANKR.P. 3003(c)(3). Any creditor who fails to file a proof of claim cannot be considered a creditor for the purpose of distribution of the estate. *Id.* at 3003(c)(2). 11 U.S.C. § 105(a) provides this court with the power to issue orders and enforce compliance with the provisions of the Federal Rules of Bankruptcy Procedure as well as the orders of the Bankruptcy Court.

In this case, the Bankruptcy Court set a September 17, 2001 Bar Date pursuant to Rule 3003(c)(3) for creditors to file proofs of claim. Bankr.Ct. Order dated Aug. 6, 2001 at 1. Because the plaintiffs in this case are the relevant creditors and their claims are disputed and unliquidated, the plaintiffs were required to file formal proofs of claim that conformed substantially to the Bankruptcy Court's Official Form before the Bar Date in order to preserve their claims. *Id.* at 2; FED. R. BANKR.P. 3003(c)(2). The defendants assert, and this court agrees, that the plaintiffs did not follow the foregoing procedures. First, five of the plaintiffs—Mary Dulworth and the four Trust plaintiffs—failed to file any individual proofs of claim by the Bar Date.

Defs.' Mot. at 7. Second, the remaining five plaintiffs' proofs of claim concerning accrued vacation pay are invalid. Because vacation pay was not "the subject of litigation pending in a court of competent jurisdiction," these proofs of claim could not preserve the "Class 7 Insured Litigation Claims" that are the basis of the plaintiffs' Amended Complaint. *Id.* at 8; First Am. Plan of Reorganization dated Nov. 5, 2001 at 9–10. Third, the proofs of claim filed by the Partnership could not preserve the claims of the individual plaintiffs both included in or excluded from the Partnership, because the Partnership was not the creditor. *Id.* at 9–10. The court will address each of these conclusions in turn.

### 1. The Plaintiffs Mary Dulworth, Jack Dulworth Trust, Joseph Dulworth Trust, Thomas Dulworth Trust, and Chan Milton Trust Concede That They Filed No Individual Proofs of Claim

■ First, the defendants argue that five of the plaintiffs failed to file individual proofs of claim, Defs.' Mot. at 7, and the plaintiffs offer no counterargument. *See generally* Pls.' Opp'n. This Circuit has held that when a plaintiff's opposition addresses only some of the arguments raised in a defendant's dispositive motion, a court may treat those arguments that the plaintiff failed to oppose as conceded. *Fed. Deposit Ins. Corp. v. Bender,* 127 F.3d 58, 67–68 (D.C.Cir.1997); *Stephenson v. Cox,* 223 F.Supp.2d 119, 120 (D.D.C.2002). Because the plaintiffs failed to contest the argument that neither Mary Dulworth nor the four Trust plaintiffs filed individual proofs of claim, the court treats it as conceded. But, contrary to the defendants' assertion that Mary Dulworth and the Trust plaintiffs are precluded "as a matter of law" from seeking relief, Defs.' Mot. at 7, the matter is not fully resolved just because these plaintiffs did not oppose every argu-

ment advanced by the defendants. *See Burke v. Gould,* 286 F.3d 513, 518 (D.C.Cir.2002) (quoting *Robbins v. Reagan,* 780 F.2d 37, 52 n. 23 (D.C.Cir.1985)) (holding that "in view of the severity of dismissal of a potentially meritorious claim, [ ] treating an issue as conceded for failure to respond fully to a motion for summary judgment should only be applied to egregious conduct") (internal citation omitted). Mary Dulworth and the Trust plaintiffs also rely on the alternative argument that the Partnership can file proofs of claim on behalf of all the plaintiffs. Pls.' Opp'n at 3–6. The court addresses this argument below in section 3.

**2. The Plaintiffs Jack Dulworth, Joseph Dulworth, Edward Dulworth, Thomas Dulworth, and Chan Milton Concede That Their Individual Proofs of Claim Pertaining to Accrued Vacation Pay are Invalid**

■ Second, the defendants assert that the ten proofs of claim filed by five of the plaintiffs—Jack Dulworth, Joseph Dulworth, Chan Milton, Edward Dulworth, and Thomas Dulworth—regarding accrued vacation pay do not constitute valid proofs of claim under the Plan and Order. Defs.' Mot. at 8. Pursuant to the Plan and Order, the plaintiffs' claims were Class 7 Insured Litigation Claims, meaning that they were "the subject of litigation pending in a court of competent jurisdiction" at the time the Plan was consummated. First Am. Plan of Reorganization dated Nov. 5, 2001 at 9–10. Vacation pay, however, was not "the subject of litigation pending in a court of competent jurisdiction." *See generally,* Am.Compl. Therefore these proofs of claim cannot preserve the plaintiffs' allegations. Furthermore, the plaintiffs do not address this contention in their opposition. *See generally* Pls.' Opp'n. Consequently, the court concludes that the five plaintiffs who filed proofs of claim regarding accrued

vacation pay cannot preserve any of their claims on this basis. *Bender,* 127 F.3d at 67–68; *Stephenson,* 223 F.Supp.2d at 120.

**3. The Court Concludes That the Partnership Cannot File Proofs of Claim on Behalf of the Plaintiffs**

■ Because the Partnership is not a named plaintiff in the federal action and thus not the relevant creditor, its proofs of claim preserve neither the claims made by the plaintiffs excluded from the Partnership nor those of the plaintiffs included in the Partnership. The Bankruptcy Court's Official Form clearly requests the "name of creditor" who is filing a proof of claim. FED. R. BANKR.P. 3001. The Partnership is not the relevant "creditor" in this litigation and thus this proof of claim failed to "conform substantially" to the Official Form as required. *Id.* at 3001(a). Accordingly, the court holds that the Partnership's proof of claim was invalid.

■ Moreover, even if the Partnership were the relevant creditor in this case, the proofs of claim filed by the Partnership cannot cover those plaintiffs not in the Partnership. The defendants point out and the plaintiffs necessarily must concede that of the ten plaintiffs, only five—Edward Dulworth, Mary Dulworth, Jack Dulworth, Joseph Dulworth, and Chan Milton—are actually in the Partnership. Defs.' Statement at 4; *see generally* Pls.' Opp'n. Contrary to the plaintiffs' assertion, the defendants' knowledge of the Partnership's membership through their familiarity with the State Complaint actually indicates that the defendants could not reasonably expect that the five individuals not in the Partnership would be covered by these proofs of claim. Therefore, no reasonable trier of fact could find that the parties not in the Partnership—Thomas Dulworth, Jack Dulworth Trust, Joseph

Dulworth Trust, Thomas Dulworth Trust, and Chan Milton Trust—"conformed substantially" to the Bankruptcy Court's Official Form and thus preserved their ability to hold the defendants liable. *See In re Dow Corning Corp.*, No. 97–1177, 1998 WL 180594, at *4, 1998 U.S.App. LEXIS 7119, at *13 (6th Cir. Apr. 6, 1998) (holding that "the decision to continue the pursuit of claims against a debtor in bankruptcy is one *all creditors* must make") (emphasis added). Accordingly, the non-partners—Thomas Dulworth, Jack Dulworth Trust, Joseph Dulworth Trust, Thomas Dulworth Trust, and Chan Milton Trust—did not file valid proofs of claim.

■ In addition, the Partnership's proofs of claim cannot apply individually to the five partners in the Partnership. While the defendants point to case law indicating that partnerships are distinct entities from their partners, *see* Defs.' Reply at 5, the court is persuaded more by the language of the Bar Date Orders themselves. First, both of the Orders provide in pertinent part:

> Pursuant to section 105(a) of title 11 of the United States Code and Federal Rule of Bankruptcy Procedure 3003(c)(3), all persons and entities, including, without limitation, *individuals, partnerships,* corporations, estates, and *trusts* holding or wishing to assert prepetition claims ... against or interests in one or more of the Debtors are required to file, with respect to each of the Debtors against which a Claim is asserted, a *separate,* completed and executed proof of claim or proof of interest (conforming substantially to Official Bankruptcy Form 10).

Bankr.Ct. Order dated May 10, 2001; Bankr.Ct. Order dated Aug. 6, 2001 (emphasis added). Not only did the orders themselves clearly differentiate between partnerships, individuals, and trusts, but they expressly required separate proofs of claim for each creditor as well. Additionally, the Partnership's State Complaint refers to the Dulworths, Chan Milton, the Dulworth Trusts, and the Partnership as separate entities. *See generally* State Compl. Thus, the plaintiffs' proofs of claim that were filed by the partnership failed to "conform substantially" to the Official Form.

This Circuit has allowed an entity other than the specific creditor to file a proof of claim on behalf of the creditor only where the two parties are "one and the same." *In re Buckingham Super Mkts., Inc.*, 631 F.2d 763, 766 (D.C.Cir.1980). The *Buckingham* court allowed a co-partnership to file bankruptcy proofs of claim on behalf of the individual plaintiffs because the individuals traded solely under the co-partnership's name and submitted the exact deeds and rent collections in question to demonstrate that the plaintiffs as individuals were the real parties in interest. *Id.* at 764–66. In this case, however, there is no evidence, aside from the plaintiffs' bald assertion, to show that the Partnership and the plaintiffs are "one and the same." Pls.' Opp'n at 4. The State Complaint, which the plaintiff cites, actually treats the plaintiffs and the Partnership as separate entities. Thus, the Partnership could not file a proof of claim on behalf of the partners, because they are not "one and the same."

■ The plaintiffs, in fact, do not specifically contest the argument that they did not "conform substantially" to the Bankruptcy Court's Official Form. *See generally* Pls.' Opp'n. Instead, they place sole reliance on the argument that the doctrine of informal proofs of claim preserves their claims. *Id.* at 3–6. Their reliance is misplaced.

Although this Circuit has not expressly adopted the doctrine of informal proofs of

claim, the principle has been in existence for almost a century, *see Hutchinson v. Otis*, 190 U.S. 552, 555, 23 S.Ct. 778, 47 L.Ed. 1179 (1903); *J.B. Orcutt Co. v. Green*, 204 U.S. 96, 102, 27 S.Ct. 195, 51 L.Ed. 390 (1907), and is still very much alive in other circuits. *See, e.g., In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 605–12 (6th Cir.2000); *In re A.H. Robins Co., Inc.*, 862 F.2d 1092, 1095–96 (4th Cir. 1988); *In re Anderson–Walker Indus., Inc.*, 798 F.2d 1285, 1285–88 (9th Cir.1986); *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1217–18 (11th Cir.1985); *Fausett v. Murner*, 402 F.2d 961, 962 (5th Cir.1968); *In re Gibraltor Amusements Ltd.*, 315 F.2d 210 (2d Cir.1963).

▆▆▆ In determining what qualifies as an informal proof of claim, courts have used two similar tests. Under the first test, a document must "state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." *United States v. INSLAW, Inc.*, 113 B.R. 802, 812 (D.D.C.1989) (quoting *In re Anderson–Walker Indus.*, 798 F.2d at 1287); *accord In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 183 (9th Cir. 1979). Furthermore, it must be apparent that "*the creditor* intends to seek recovery from the estate." *INSLAW*, 113 B.R. at 812 (emphasis added). The second test utilizes a five-pronged analysis and holds that the proof of claim: (1) must be in writing; (2) must contain a demand by *the creditor* on the debtor's estate; (3) must express an intent to hold the debtor liable for the debt; (4) must be filed with the Bankruptcy Court; and (5) based on the facts of the case, it would be equitable to allow the amendment. *In re Reliance Equities, Inc.*, 966 F.2d 1338, 1345 (10th Cir. 1992) (emphasis added); *In re Waterman*, 227 F.3d at 609. Courts have consistently held that "mere notice of a claim to a

debtor and the debtor's knowledge of a claim is not enough to constitute an informal proof of claim." *INSLAW*, 113 B.R. at 812; *accord In re A.H. Robins*, 862 F.2d at 1095.

The purpose behind the doctrine of informal proof of claim is "to alleviate problems with form over substance; that is, equitably preventing the potentially devastating effect of the failure of a creditor … when, in fact, pleadings filed by the party asserting the claim … puts all parties on sufficient notice that a claim is asserted by a *particular creditor*." *In re Waterman*, 227 F.3d at 609 (emphasis added). Because this is a doctrine of equity, however, "creditors who ignore the formalistic requirements of the Code do so at their own peril." *Id.*

The plaintiffs assert that this doctrine renders the Partnership's proofs of claim sufficient to cover not only the plaintiffs in the Partnership, but also those not in the Partnership. The plaintiffs support this contention on the grounds that their claims "arose out of the same overarching fact pattern" as the Partnership's claims in the Kentucky state lawsuit. Pls.' Opp'n at 4. Thus, because of the "inextricably intertwined and relatively inseparable representative relationship" between the Dulworth Trusts, the Dulworths as individuals, and the Partnership, the Partnership's proofs of claims are adequate to cover both the plaintiffs who are partners and those who are not. *Id.*

The doctrine of informal proofs of claim helps neither case. The principle applies most often to situations where a creditor files a formal proof of claim past the relevant bar date. Then, if the creditor can show the court that he made an informal proof of claim before the bar date, the "late proof of claim may be treated as a perfecting amendment of the informal claim." *Wilkens v. Simon Bros., Inc.*, 731

F.2d 462, 464 (7th Cir.1984); *see also AER–Aerotron, Inc. v. Tex. Dep't of Transp.*, 104 F.3d 677, 679 n. 2 (4th Cir. 1997) (stating that "much of the caselaw on the subject of informal proof of claims has arisen in the context of late claims"); *In re Franciscan Vineyards*, 597 F.2d at 182 (quoting *In re Patterson–MacDonald Shipbuilding Co.*, 293 F. 190, 191 (9th Cir.1923)) (stating that the doctrine of informal proofs of claim is a "rule of liberality in amendments"); *In re Judy Wood Publ'g Corp.*, 289 B.R. 319, 320 (Bankr. E.D.Va.2002) (stating that "if an informal proof of claim is established by the evidence then the court must decide if amendment to the informal proof of claim is equitable"); *In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr.S.D.N.Y.1996) (concluding that the informal proof of claim doctrine is designed to "alleviate the harsh results of strict enforcement of the bar date"). In fact, one of the elements of the five-pronged test noted *supra* holds that a court should weigh the equities in deciding whether "to allow the amendment." *In re Reliance Equities*, 966 F.2d at 1345.

In this case, the plaintiffs have neither filed a late proof of claim nor sought an amendment to the proofs of claim filed by the Partnership. Rather, the plaintiffs invoke the informal proof of claim doctrine as standing for the proposition that erroneous or vague proofs of claim should somehow be excused, even where no amendment has been sought. The plaintiffs maintain that the Partnership's proofs of claim demonstrated a mere "form over substance" problem. Pls.' Opp'n at 4 (quoting *In re Waterman*, 227 F.3d at 609). Importantly, the full "form over substance" rule of *In re Waterman*, which the plaintiffs omit, provides that an informal proof of claim must "put[ ] all parties on sufficient notice that a claim is asserted by a *particular creditor*." 227 F.3d at 609 (emphasis added). Thus, the Partner-

ship's proofs of claim could have only put the defendants on notice that the Partnership, and not the individual Dulworths and Dulworth Trusts, was asserting a claim. *Id.*

Finally, the plaintiffs inaccurately apply *Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543, 548–52 (D.Del.2001), for the proposition that creditors need not file individual proofs of claim. In *Agassi*, which the court limited to "the circumstances of th[at] case," the court held that, because the athletes as individuals and their service companies were not distinct entities, the service companies could file proofs of claim on behalf of the athletes. *Id.* at 549. The defendants had even acknowledged that the service companies existed for the sole purpose of protecting the athletes from liabilities. *Id.* In this case, however, the Partnership exists for numerous reasons other than to represent the plaintiffs in potential suits. Moreover, the instant suit concerns partnerships, not the relationship between athletes and their service companies nor an analogous relationship. Thus, *Agassi* does not persuade the court to consider the Partnership's filing as a filing by each of the individual creditors. Accordingly, the court grants the defendant's motion for summary judgment. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## IV. CONCLUSION

For all these reasons, the court grants the defendants' motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2004.